**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
────────────────────────────────

**WILFREDO SOTO,**

                              **Petitioner,**

        **-v-**                                          **05-CV-56Sr**

**JAMES T. CONWAY,**
**SUPERINTENDENT,**

                              **Respondent.**

────────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

        This matter was referred to the undersigned by the Hon. William S.

Skretny, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #8.


        Petitioner Wilfredo Soto, an inmate of the New York State Department of

Corrections, commenced this proceeding *pro se*, pursuant to 28 U.S.C. § 2254,

challenging his conviction following a jury trial before the Hon. Stephen R. Sirkin,

J.C.C., Monroe County, of the crimes of Criminal Possession of a Weapon, Second

Degree, in violation of New York State Penal Law § 265.03(2); Reckless

Endangerment, First Degree, in violation of New York State Penal Law § 120.25; and

Criminal Mischief, Fourth Degree, in violation of New York State Penal Law § 145(1).

For the following reasons, it is recommended that the petition be denied.

## BACKGROUND

At a pretrial conference on October 3, 2001, the Hon. John J. Connell,

J.C.C., Monroe County, was informed that petitioner had rejected a plea bargain with a

recommended sentence of five years and inquired of the defendant as follows:

> You understand, obviously, you do have the right to go to
> trial.  If you are convicted of the possession of a weapon in
> the second degree charge at trial, the lowest sentence that
> could be imposed is 5 years, you could receive up to 15
> years; do you understand that?

10/3/2001 at 2.[1]  Petitioner responded affirmatively. 10/3/2001 at 2.


At the conclusion of the Huntley hearing on January 11, 2002, Judge

Connell advised petitioner that

> the trial in this case will begin on May 6 at 10 a.m.  That's a
> Monday morning.  Obviously, it's important that you're here
> to assist your attorney in carrying out the defense of your
> case and in giving you the chance to see and hear the
> witnesses that are called to testify.  But the law requires that
> I inform you that if you are not here on that date, and if there
> is not a valid reason for your [sic] not being here, your
> release would be revoked, a warrant would be issued for
> your arrest and we would go ahead with the trial anyway; do
> you understand that?

1/11/2002 at 16.  Petitioner responded affirmatively.  1/11/2002 at 16.  Judge Connell

also advised that petitioner that

> The last time there was a discussion about any plea offer, it
> was to Criminal Possession of a Weapon in the Second
> Degree with a five-year sentence as a second felony
> offender.  That's the very minimum that you could receive as

---

[1] "10/3/2001 at 2" references page 2 of the transcript of proccedings held on October 3, 2001.

> a second felony offender if you were convicted.  If you were
> convicted of the charge, the maximum you could receive is
> 15 years.  I just want you to understand . . .

1/11/2002 at 17.  The trial commenced on May 7, 2002.  T38.[2]  During the course of the

trial, presiding County Court Judge Stephen R. Sirkin repeated that

> if you should absent yourself from the continuation of the
> trial and the Court makes a finding that you voluntarily and
> willingly decided to absent yourself from the trial, the trial
> can continue.

T120.

At trial, City of Rochester Police Officer Virgil Ross testified that he was

parked at 700 North Street at approximately 2:14 p.m. on June 13, 2001 when he heard

a dispatch regarding shots fired at First and Bay Street.  T48-49.  At the same time, he

observed a purple van turn off Central Avenue onto North Street and into the parking lot

toward his patrol car.  T49, 51.  The driver of the van, Delso Ferriera, and the

passenger, Earl Thomas, yelled that they had been shot at.  T50.  Officer Ross

observed a bullet hole in the driver's side door of the van and another bullet hole in the

front quarter panel of the van.  T51.

Delso Ferriera testified that he was driving his purple minivan on Bay

Street at approximately 2:15 p.m. on June 13, 2001 with his friend, Earl Thomas, in the

passenger seat when he observed the petitioner yell something out.  T60-61.  Mr.

Ferriera pulled the van over, got out of his vehicle and tried to hold petitioner down.

---

[2] "T38" references page 38 of the trial transcript.

T72.  Petitioner walked away, so Mr. Ferriera continued driving to All City Clothing to make a delivery.  T62, 74.  Mr. Ferriera stated that petitioner used to date his brother's girlfriend and had shot at his brother, Manuel Ferriera, .  T68, 71, 73, 82.

As he approached Bay Street after completing the delivery, Delso Ferriera observed petitioner sitting in front of Carlos' Mini-Mart.  T63.  As Mr. Ferriera stopped at the stop sign, petitioner approached the van.  T63.  When he reached the middle of the road, Mr. Ferriera observed petitioner pull out a chrome handgun and shoot three shots toward him.  T64.  Mr. Ferriera ducked and turned the van onto Bay Street.  T65.  He saw a police officer on North Street and told him what happened.  T65.  At that point, Mr. Ferriera observed the two bullet holes in his van.  T65.

Earl Thomas testified that he is a close friend of Delso Ferriera and was driving in Mr. Ferriera's van delivering phone cards at approximately 2:15 p.m. on June 13, 2001 when he observed petitioner in front of the liquor store and heard him yell out, "I'm going to kill you and your brother."  T84-85.  Mr. Ferriera pulled the car over and exited the vehicle.  T86.  Mr. Thomas observed petitioner talking on his cell phone about two block away.  T86.  Mr. Thomas and Mr. Ferriera got back into the van, drove to All City Clothing and delivered the phone cards.  T86.  As they were approaching the intersection of Bay and First Street, Mr. Thomas observed petitioner start running toward the van with his "hand crouched down by the right-hand side in his pocket." T87-88.  He then observed petitioner pull out a small chrome semi-automatic handgun and fire the weapon at the vehicle.  T88-89, 94.  As Mr. Ferriera turned onto Bay Street, Mr. Thomas observed petitioner run across the street.  T90.

Samuel Gonzales testified that he resides at 211 Bay Street.  T101.  At approximately 2:15 p.m. on June 13, 2001, Mr. Gonzales and his youngest child were standing on the sidewalk in front of his house waiting for his older children to walk home from school when he observed petitioner running from Carlos' Mini-Mart shooting a gun toward a blue van.  T101-05, 112.  Mr. Gonzalez heard about three shots.  T105.  Mr. Gonzalez knew petitioner from the neighborhood.  T104.

City of Rochester Police Officer Robert Roxstrom testified that he was called to the scene of the shooting and observed three spent shell casings lying on the sidewalk in front of 229 Bay Street. T122.   Evidence Technician Theresa Tasso testified that the three spent shell casings were 22 caliber shells.  T128.

David Salvatore, Investigator for the City of Rochester Police Department, interviewed petitioner at the Clinton Station on June 21, 2001.  T140-41.  Investigator Salvatore advised petitioner of his constitutional rights and obtained petitioner's consent to speak with him.  T143.  Petitioner advised Investigator Salvatore that

> he was at a vacant house next to Carlos' Minimart on Bay Street about 2 in the afternoon.  He saw a van coming down First Street.  In the van he said there was a driver that he knew as Manny and there was a male black passenger in the front seat.  He then heard gunshots rang [sic] out and he fled the scene.  . . . I asked him at that point if he knew who had fired the shots.  He said he wasn't certain.  I then asked him if this individual he said was Manny would have a reason to fire a gun at him or fire a gun at all and he said that Manny would.  That Manny – he knew Manny and he had trouble with him in the past over a girl and . . . Manny had shot at him before.

T144.  After Investigator Salvatore read Delso Ferriera's statement to petitioner,

petitioner indicated that Mr. Ferriera "lied, that he did not fire the gun shots."  T145. When informed that he would be charged with felonies, petitioner indicated that he did not want to talk anymore, would not sign anything and would "beat this in court."  T145.

Michelle Baxter testified for the defense.  T150.  Ms. Baxter testified that she was exiting Rivera's store across the street from Carlos' Mini-Mart when she heard a gun shot and observed a number of people, including petitioner, running towards her. T151, 162.  By the time she heard the third shot, a few minutes later, she observed petitioner stumble as he was running away from Carlos' Mini-Mart.  T154, 162.  Ms. Baxter did not see a gun in petitioner's hand and testified that the shots were further away from petitioner.  T154.  She testified that she knew petitioner from the neighborhood, but did not associate with him or consider him a friend.  T155.

Petitioner testified that he did not know Delso Ferreria or Earl Thomas and had no problems with them.  T168.  He testified that as he was walking out of Carlos' Mini-Mart, the van came by and someone inside the van said something, petitioner's cousin yelled something back, and the van pulled over.  T168-70.  Petitioner testified that the driver and the passenger both got out of the van and looked like they wanted to fight, but he and his cousin started walking back towards First Street.  T170. Approximately three minutes later, petitioner and his cousin were sitting on the steps of an abandoned house next to Carlos' Mini-Mart, drinking cognac and orange juice, when he observed the van at the stop sign on First Street.  T170-71.  Petitioner heard a gun shot and took off.  T172.

On cross-examination, petitioner testified that Manuel Ferriera shot at him "plenty of times," including an incident on May 3, 2001 which resulted in the arrest of Manuel Ferriera.  T177.  When asked about his interview with Investigator Salvatore, petitioner testified that he said he would "beat it in court" because there were a lot of witnesses.  T185.  The prosecutor then asked:

> Q.    And you never told the Investigator that you
>          were innocent, right?
>
> A.    Probably did tell him that.
>
> Q.    Now, you said you would beat it in court.  You
>          didn't say I'm innocent, did you?
>
> A.    Actually –
>
>          THE COURT:  Let's stay away from that next
> question.  Don't answer.  Jury is instructed to
> disregard the question and disregard any
> answer given to it.  Stricken.

T185.

During summation, defense counsel noted that

> only six weeks before this, Manny Ferriera, who did have a
> grievance with Willy, Willy explained carefully Manny had a
> problem with me, I didn't have a problem with Manny, pulled
> out a gun and shot at him.  What did Willy do?  On May 3rd,
> and I thank the prosecutor for bringing this out, what did Will
> do when Manny shot at him?  Did he go off half cocked?
> Did he get a gun?  Did he wait in ambush?  No, he went to
> the police and filed criminal charges and gave statements
> and testified.  He deals with those sort of problems with
> people that are threatening his life within the system.

T195.  The prosecutor responded as follows:

> Now, Defense Counsel, when he was giving his closing
> stated that the Defendant pressed charges against Manuel

-7-

Ferriera, the brother.  He stated that the Defendant testified against Manual Ferriera and the Defendant never testified.  The Defendant failed to cooperate.

[Defense Counsel]:  I'm sorry, is Counsel testifying about evidence that is not part of the record?

THE COURT: I apologize.  I'm not sure I heard the last remark.

(The Reporter read back the requested portion of summations.)

THE COURT: Let's leave it with you folks.  It's your recollection of the testimony, not either of the attorneys or the Court.  Move on.

T209.  The prosecutor subsequently stated:

And what's the most telling thing the Defendant said: I will beat this in court.  He didn't say I'm innocent.  I'm not guilty.  What would you do if somebody accused you of a crime?

T216-17.  Judge Sirkin intervened, stating:

Stay away.  Stricken.  Disregard.  The Defendant has no burden of proving anything.  DA carries the complete burden.  Defendant carries no burden.  Move on.

T217.  The prosecutor continued with the following:

What was the last thing he said, I'm going to beat it in court.  What does that tell you?  What do you think that means?  Yeah, I did it and I'm going to get away with it.

[Defense Attorney]:  We're right back.

THE COURT: Stay away from it.  I'm not going to tell you again.

[Prosecutor]: Okay.  Thank you.

THE COURT: Same thing I just instructed you folks, only twice as much.

T217.

The following morning, Judge Sirkin took the bench and noted the absence of the Defendant.  T223.  Defense counsel informed the Court that he had been

> advised by his mother he believes that his presence was not necessary this morning and he is, according to his mother, working someplace and she doesn't know where. . . . I have no other excuse other than I, of course, didn't tell him his presence wasn't necessary.  He was given Parker's[3] warnings twice.

T224.  The Court confirmed that

> it's not a question of making sure he is not hospitalized, ill or otherwise a problem [sic].  It's that he voluntarily and willingly chose not to come today.

T224.  Defense counsel confirmed

> That does appear to be the case only based on what his mother told me.  He did not forg[e]t.  He doesn't have a flat tire.  He has chosen to be somewhere.

T224.  Defense counsel conceded that there was no basis to challenge continuation of the proceedings in petitioner's absence, so the Court proceeded to charge the jury.

T224-25.  The petitioner was present by the time the jury returned its verdict finding petitioner guilty on all counts in the indictment.  T249.

---

[3] In order to effect a voluntary, knowing and intelligent waiver of the constitutional right to be present at a criminal trial

> the defendant must, at a minimum, be informed in some manner of the nature of the right to be present at trial and the consequences of failing to appear before trial (*see Schneckloth v. Bustamonte*, 412 U.S. 218, 243-44; *Brady v. United States*, 397 U.S. 742, 748).  This, of course, in turn requires that defendant simply be aware that trial will proceed even though he or she fails to appear.

*People v. Parker*, 57 NY2d 136, 141 (1982).

Petitioner was sentenced as a second felony offender to a determinate term of incarceration of 12 years on the charge of Criminal Possession of a Weapon, Second Degree, plus 5 years post-release supervision; an indeterminate concurrent term of 2 to 6 years on the charge of Reckless Endangerment, First Degree; and a concurrent one year sentence on the charge of Criminal Mischief, Fourth Degree. 5/20/02 at 5.

On appeal to the New York State Supreme Court, Appellate Division, Fourth Department, assigned counsel argued that: (1) the prosecutor's summation deprived the petitioner of a fair trial; (2) the trial court erred in charging the jury without the presence of the petitioner; and (3) the sentence was harsh and excessive.  A4.  The Appellate Division modified the conviction and remanded the proceeding for resentencing on the charge of Reckless Endangerment, First Degree, but otherwise affirmed.  *People v. Soto*, 2 A.D.3d 1041 (4th Dep't 2003).  With respect to the first argument, the Appellate Division wrote that

> Defendant failed to object to remarks made by the prosecutor during summation, and thus failed to preserve for our review his contention that those remarks deprived him of a fair trial (*see* CPL 470.05[2]).  In any event, we conclude that, in light of the overwhelming evidence against defendant, which included the testimony of three eyewitnesses who knew the defendant and testified that he had a gun and fired it at the van, "the jury would have reached the same result if the conduct had not occurred" . . .

A75.  With respect to the second argument, the Appellate Division concluded

> that Supreme Court did not err in charging the jury in defendant's absence.  Although charging the jury is a material stage of trial at which defendant has an "unequivocal right to be present" . . . defendant was advised twice during the proceedings that if he failed to appear, the

> trial would continue in his absence.  Thus, having been
> "informed of the nature of the right to be present at trial and
> the consequences of failing to appear at trial," defendant
> waived his right to be present during the jury charge . . . .

A75-76.  Counsel petitioned the New York State Court of Appeals to review whether

petitioner was deprived of his right to be present at a material stage of trial.  A77. On

January 27, 2004, the Hon. George Bundy Smith denied leave to appeal.  *People v.*

*Soto*, 1 N.Y.3d 634 (2004).  On March 30, 2004, petitioner was resentenced to a

concurrent term of 2-4 years on the charge of Reckless Endangerment, First Degree.

A81.

## DISCUSSION

**Prosecutorial Misconduct**

Petitioner argues that he was denied a fair trial by: (1) the prosecutor's

commentary on matters outside of the evidence presented at trial, *to wit*, his comment

that petitioner did not cooperate with police in prosecuting charges against Manuel

Ferriera; and (2) the prosecutor's cross-examination of petitioner and comments during

closing arguments as to whether petitioner asserted his innocence while he was being

questioned by the police.  Dkt. #7, pp.3-4.

Respondent argues that petitioner failed to present these claims to the

New York State Court of Appeals.  Dkt. #7, pp.3-9.  Respondent also argues that

counsel's failure to object to these alleged improprieties creates an adequate and

independent state basis for denying *habeas* relief.  Dkt. #7, pp.4-5.  Respondent argues

that petitioner has failed to show cause for the default or actual prejudice resulting from

the default and cannot demonstrate a fundamental miscarriage of justice.  Dkt. #7, p.6.

Finally, Respondent argues that the petitioner's claims of misconduct were denied, in

the alternative, on the merits by the Appellate Division and that this determination is not

contrary to, nor did it involve an unreasonable interpretation of, clearly established

Supreme Court precedent and that it does not constitute an unreasonable

determination of facts.  Dkt. #7, pp.6-7.


Before a federal court can address the merits of any federal issue

contained in a petition for a writ of *habeas corpus,* the petitioner must have "exhausted

the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *see*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 843-44 (1999).  "Exhaustion of state remedies

requires presentation of the claim to the highest state court from which a decision can

be obtained."  *Hogan v. Ward,* 998 F. Supp. 290, 293 (W.D.N.Y. 1998), *citing Daye v.*

*Attorney General of the State of New York,* 696 F.2d 186, 190 n.3 (2d Cir. 1982); *see*

*O'Sullivan*, 526 U.S. at 839-40 ("a state prisoner must present his claims to a state

supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the

exhaustion requirement.").  "In New York, to invoke one complete round of the State's

established appellate review process, a criminal defendant must first appeal his or her

conviction to the Appellate Division, and then must seek further review of that conviction

by applying to the Court of Appeals for a certificate granting leave to appeal."

*Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir.) (internal quotation and citation omitted),

cert. denied, 544 U.S. 1025 (2005).

In the instant case, although counsel for petitioner enclosed a copy of his brief to the Appellate Division with his application to the New York Court of Appeals, petitioner's letter brief to the New York Court of Appeals only sought review of whether petitioner waived his constitutional right to be present during a material stage of his trial and whether the trial court's procedure for making this determination was sufficient. A77.  Thus, petitioner did not present his claim of prosecutorial misconduct to the New York State Court of Appeals.  *See Grey v. Hoke*, 933 F.2d 117 (2d Cir. 1991).   As a result, his claim is unexhausted.

The same concerns that bar federal *habeas* review of unexhausted claims also bar federal *habeas* review of claims that have been procedurally defaulted in state court.  *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.").   In the instant case, petitioner has defaulted on this claim because he is allowed only one application for leave to appeal to the Court of Appeals. *See* N.Y. Court Rules § 500.10(a) (only one application for leave to appeal may be made).  Moreover, petitioner cannot raise the issue in a CPL §440.10 motion.  *See* CPL §440.10(2)(a) (barring review of claims previously determined on direct appeal); CPL §440.10(2)(c) (barring review if a claim could have been raised on direct appeal).  Thus, petitioner's claim of prosecutorial misconduct is procedurally barred because the petitioner has no remedies available in state court.  *See Grey*, 933 F.2d at 120-21 ("petitioner's forfeiture in state court of [two of the claims raised in his petition by virtue of his failure to raise

them in his letter seeking leave to appeal to the New York Court of Appeals] bars him from litigating the merits of those claims in federal habeas proceedings, absent a showing of cause for the procedural default and prejudice resulting therefrom").

Petitioner's claim of prosecutorial misconduct is also barred for failure to make a contemporaneous objection. Pursuant to New York's Criminal Procedural Law, "an issue is properly preserved for appeal as a matter of law only if the appellant objected on that ground in the trial below," although "the Appellate Division may, as a matter of discretion, rule on a forfeited claim 'in the interest of justice.'"  *Glenn v. Bartlett*, 98 F.3d 721, 724, n.2 (2d Cir. 1996), *cert. denied*, 520 U.S. 1108 (1997); *see* N.Y. Crim. Proc. Law §§ 470.05(2); 470.15(6).  In the instant case, the Appellate Division determined that counsel "failed to object to remarks made by the prosecutor during summation, and thus failed to preserve for our review his contention that those remarks deprived him of a fair trial."  A75.  For example, counsel for the petitioner questioned whether the prosecutor was testifying about evidence outside of the trial record, prompting Judge Sirkin to instruct the jury that they were to rely upon their recollection of the evidence presented, but did not request any further instruction or move for a mistrial.  T209.  Similarly, petitioner's counsel did not object to the Court's instruction that the jury disregard the prosecutor's question as to whether petitioner claimed innocence during questioning, nor did he object to Judge Sirkin's instruction that the jury disregard the prosecutor's reference on summation to petitioner's alleged failure to assert his innocence because petitioner bore no burden of proof.  T216-17.  Accordingly, petitioner's claim of prosecutorial misconduct is procedurally defaulted for failure to make a contemporaneous objection. *See O'Henry v. Superintendent,*

*Watertown Corr. Facilty,* No. 05-CV-4752, 2007 WL 2126094, at *5 (E.D.N.Y. July 24, 2007) ("Where a defendant's objection is sustained, but the defendant fails to request additional relief, the contemporaneous objection rule bars review."); *Montalvo v. Annetts*, No. 02 Civ. 1056, 2003 WL 22962504, at *21 (S.D.N.Y. Dec. 17, 2003) (collecting cases).

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  The scope of this exception is very limited and the burden of proof very heavy.  *Spence v. Superintendent, Great Meadow Corr. Fac.,* 219 F.3d 162, 171-72 (2d Cir. 2000), *citing Sawyer v. Whitley*, 505 U.S. 333, 336 (1992); *see also Calderon v. Thompson*, 523 U.S. 538, 559-60 (1998)(the general standard requires that the petitioner establish actual innocence by clear and convincing evidence).  "To demonstrate actual innocence, a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002).

Petitioner cannot show cause for the procedural default on this claim because "the factual or legal basis for [the] claim was . . .  reasonably available" to appellate counsel at the time of the request for leave to appeal.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994), *cert.*

*denied*, 514 U.S. 1054 (1995).  In fact, the issue was raised on direct appeal and specifically rejected by the Fourth Department.  A75.  Moreover, there is no claim of actual innocence presented by petitioner.  Accordingly, petitioner's claim must be dismissed.

So long as a state court holding contains a plain statement that a claim is procedurally barred, a federal court may not review it in the context of a petition for writ of habeas corpus, even if the state court, in the alternative, also rejected the claim on the merits.  *Harris v. Reed*, 489 U.S. 255, 264 & n.10 (1989).  However, it is clear that if this Court were permitted to review the merits of petitioner's claim, there would be no basis for disturbing the Appellate Division's determination that the objectionable comments did not rise to the level of denying petitioner a fair trial.

"In evaluating whether allegedly improper comments by the prosecutor are grounds for reversal, the fundamental question is whether, if there was misconduct, it caused substantial prejudice to the defendant, thereby depriving him of his right to a fair trial."  *United States v. La Morte*, 950 F.2d 80, 83 (2d Cir. 1991), *cert. denied*, 504 U.S. 909 (1992); *see Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.") (internal quotation omitted).  "This determination depends heavily on the context of the case, and is largely controlled by three factors: (1) the severity of the misconduct; (2) curative measures taken by the district court; and (3) the certainty of conviction absent the misconduct."  *LaMorte*, 950 F.2d at 83 (internal citations omitted).  "Inappropriate prosecutorial comments, standing

alone, would not justify a reviewing court to reverse a criminal conviction in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11 (1985).  "It is a rare case in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." *United States v. Forlorma*, 94 F.3d 91, 93 (2d Cir. 1996) (internal quotation omitted).

The objectionable comments at issue in this case were of limited number and marginal relevance and were promptly addressed by the Court.  When placed in context with the evidence presented to the jury, particularly the three witnesses who identified petitioner as the shooter, it is difficult to fathom that the jury would have reached a different verdict if only the prosecutor had refrained from making these allegedly improper comments.

**Absence of Petitioner**

Petitioner argues that the trial court erred in charging the jury in his absence.  Dkt. #7, pp.4-5.  Specifically, petitioner argues that the trial court should have afforded his counsel an opportunity to locate him.  Dkt. #7, p.5.

Respondent argues that petitioner waived his right to be present.  Dkt. #5, pp.10-11.

As this argument was adjudicated on the merits by the Appellate Division and presented to the New York State Court of Appeals, it is reviewed pursuant to the

standard set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA").  This

statute provides that where a state court has adjudicated the merits of a petitioner's

claim, relief may not be granted unless the state court's adjudication:

> (1)  resulted in a decision that was contrary to, or involved
>       an unreasonable application of, clearly established
>       Federal law, as determined by the Supreme Court of the
>       United States; or
>
> (2)  resulted in a decision that was based on an
>       unreasonable determination of the facts in light of the
>       evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).


The amended standard of § 2254(d)(1) requires the federal court to give

considerably more deference to the state court's legal determinations than did the pre-

AEDPA standard.  *Marcelin v. Garvin*, No. 97 CIV 2296, 1999 WL 977221, at *6

(S.D.N.Y. Oct. 26, 1999); *Tascarella v. Reynolds*, No. 97 CV 111, 1998 WL 912010, at

*1-*2 (W.D.N.Y. Dec. 30, 1998).  As stated by the United States Supreme Court:

> § 2254(d)(1) places a new constraint on the power of a
> federal *habeas* court to grant a state prisoner's application
> for a writ of *habeas corpus* with respect to claims
> adjudicated on the merits in state court. . . . Under the
> "contrary to" clause, a federal *habeas* court may grant the
> writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state
> court decides a case differently than this Court has on a set
> of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal *habeas* court
> may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the
> prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J.); *see Sacco v. Cooksey*,

214 F.3d 270, 273 (2d Cir. 2000), *cert. denied*, 531 U.S. 1156 (2001).  Thus, a federal

court may only grant *habeas* relief where the state court's application of clearly

established federal law was not only erroneous, but objectively unreasonable.  *Id.* at

409.

Petitioner has failed to establish that the Appellate Division's resolution of

this claim was contrary to, or involved an unreasonable application of, clearly

established federal law or resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented.  "No constitutional error

results if a defendant knowingly and voluntarily waives his right to be present at trial."

*Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000).  "When a defendant has

pleaded to the charges against him and knows that the trial of the charges is to begin

on a day certain, the trial may start in his absence if he deliberately absents himself

without some sound reason for remaining away."  *Smith v. Mann*, 173 F.3d 73, 77 (2d

Cir.), *cert. denied,* 528 U.S. 884 (1999).

In the instant case, petitioner was warned that the trial would proceed as

scheduled unless there was a valid reason for his absence and that trial would continue

if petitioner voluntarily and willingly absented himself from the proceedings.  1/11/2002

at 16; T120.  Petitioner was present at the conclusion of closing arguments, when

Judge Sirkin stated that Court was in recess and would continue at 9:30 a.m. the

following morning.  T218.  At that time, petitioner's attorney informed the Court that

petitioner's mother represented to him that petitioner did not believe his presence was

necessary and that he had chosen to be somewhere other than Court.  T224.   As a result, the petition for writ of *habeas corpus* should be denied with respect to this claim.

**Sentence**

Petitioner argues that the trial court exceeded the maximum allowable sentence for his conviction on the charge of criminal possession of a weapon, second degree, by sentencing him to 12 years incarceration plus an additional five years of post-release supervision.  Dkt. #7, p.4.  Petitioner also argues that his sentence was imposed solely for the purpose of punishment, noting that the sentence is significantly more severe than the 5 years he was offered during plea negotiations.  Dkt. #1; Dkt. #7, p.4.

Respondent argues that the sentence, as modified, is legal and that this Court cannot grant petitioner relief with respect to his claim of harsh and excessive sentencing.  Dkt. #5, pp.14-20.

Petitioner's claim that his sentence is vindictive is not exhausted and is procedurally defaulted because his brief to the Appellate Division argued that the sentence was harsh and excessive but explicitly recognized that such a claim did not present an issue of law.  A32.  In any event, the United States Supreme Court has "unequivocally recognize[d] the constitutional propriety of extending leniency in exchange for a plea of guilty and of not extending leniency to those who have not demonstrated those attributes on which leniency is based."  *Corbitt v. New Jersey*, 439

U.S. 212, 224 (1978).  As the trial court was clear that the plea offer being extended to plaintiff was the minimum sentence he could receive should he be found guilty after trial and that the maximum sentence that could be imposed against him was 15 years, petitioner cannot complain that he received a sentence within the legal parameters of the offenses for which he had been convicted.  *See Naranjo v. Filion*, No. 02 Civ. 5449, 2003 WL 1900867, at *10 (April 16, 2003) (collecting cases).

Petitioner's claim that the sentence imposed was harsh and excessive is not exhausted because it was not presented to the New York State Court of Appeals. In any event, it is clear that "a sentence imposed within the range prescribed by state law does not present a question of constitutional dimensions and therefore cannot be subject to *habeas corpus* review."  *McColly v. Brunelle*, 980 F. Supp. 691, 697 (W.D.N.Y. 1997); *see Kressner v. Supras*, 826 F. Supp. 657, 663 (W.D.N.Y. 1993); *Castro v. Sullivan*, 662 F.Supp. 745, 753 (S.D.N.Y. 1987) (collecting cases).

Petitioner was convicted of the charge of Criminal Possession of a Weapon, Second Degree, which is a Class C violent felony.  New York Penal Law § 265.03.  As a second felony offender, petitioner was subject to a determinate sentence of no less than 5 and no more than 15 years of incarceration.  New York Penal Law § 70.06(6)(d).  In addition, section 70.00(6) of the New York Penal Law requires that a sentence pursuant to section 70.06 include a period of post-release supervision.  The sentence of post-release supervision is in addition to the determinate term of incarceration.  New York Penal Law § 70.45 (1).  In petitioner's case, the

required period of post-release supervision is five years.  New York Penal Law

§ 70.45(2).  Thus, petitioner's sentence of 12 years incarceration followed by five years

post-release supervision is legal.


## **CONCLUSION**

Based on the foregoing, it is recommended that the petition for writ of

*habeas corpus* be **DENIED**.


Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:


This Report, Recommendation and Order be filed with the Clerk of the

Court.


**ANY OBJECTIONS** to this Report, Recommendation and Order must be

filed with the Clerk of this Court within ten (10) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute,

Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).


The District Judge will ordinarily refuse to consider *de novo*, arguments,

case law and/or evidentiary material which could have been, but were not presented to

the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Mass. Mun.*

*Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).  **Failure to file objections within**

**the specified time or to request an extension of such time waives the right to**

**appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**

The Clerk is directed to send a copy of this Report, Recommendation and Order to the petitioner and the attorney for respondent.

DATED:      Buffalo, New York
            February 28, 2008

                                    **S/ H. Kenneth Schroeder, Jr.**
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**